[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants[1] move to dismiss the plaintiff's six count complaint for lack of subject matter jurisdiction. The defendants claim that the plaintiff, Frank Frumento, failed to exhaust the statutory remedy available to him.
The complaint alleges the following facts. The plaintiff owned two parcels of property located in West Haven, Connecticut. A "paper" road,[2]
Fowler Street, that was not in use, ran between the two parcels. When the plaintiff purchased the parcels, he assumed that Fowler Street had been abandoned by the City of West Haven because there was a building constructed on the land. When the plaintiff attempted to sell his property, however, he discovered that Fowler Street had not been abandoned.
The plaintiff applied to the West Haven city council to discontinue Fowler Street. Despite a favorable recommendation from the planning and zoning commission, the city council denied the application. The council denied the application on November 25, 1996.[3] The plaintiff alleges that the reason for the denial was that the plaintiff is a contractor. On September 4, 1998, the plaintiff brought this action seeking money damages, attorney's fees, costs and "any other relief that the Court deems just and proper."
The first three counts of the complaint allege the defendants violated the Civil Rights Act of 1871, 42 U.S.C. § 1983.[4] In count one, the plaintiff alleges that he was deprived of his property and procedural safeguards guaranteed by the due process clauses of the fifth andfourteenth amendments to the United States constitution. In count two, the plaintiff alleges that the defendants discriminated against him because he is a contractor and that similarly situated people were treated differently by the defendants. In count three, the plaintiff incorporates the allegations of the second count and adds that the defendants' actions deprived him of his rights, privileges or immunities secured by the United States constitution, thereby giving the plaintiff the right to a civil action under 42 U.S.C. § 1983. In count four, the plaintiff alleges that the defendants' actions deprived him of his CT Page 14179 right to equal protection guaranteed by the constitution of Connecticut, article first, § 1. In count five, the plaintiff alleges that the defendants tortiously interfered with his business expectations. In count six, the plaintiff alleges that the defendants conspired to prohibit him from performing his business operations in violation of42 U.S.C. § 1983, 1985.
The defendants move to dismiss the complaint on the grounds that the plaintiff has failed to exhaust the statutory remedy provided in General Statutes § 13a-49. General Statutes § 13a-49 provides: "The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way, or land dedicated as such, in its entirety, or may discontinue any portion thereof or any property right of the town or public therein, except when laid out by a court or the General Assembly, and except where such highway is within a city, or within a borough having control of highways within its limits. Any person aggrieved may be relieved by application to the Superior Court, to be made and proceeded with in the manner prescribed in section 13a-62. Whenever a petition has been presented to the selectmen for such discontinuance or partial discontinuance of any land dedicated as a highway or private way but which has not been actually used, worked or accepted, as a highway, by the town, and such discontinuance or partial discontinuance has not been made by the selectmen and approved by the town within twelve months after such presentation, any person aggrieved may be relieved by application to said court, to be made and proceeded with in the manner prescribed in section 13a-62."
A motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in the original; internal quotation marks omitted.) Gurliacciv. Mayer, 218 Conn. 531, 545, 590 A.2d 914 (1991). "Because the exhaustion [of remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's'] claim. . . ." (Citation omitted; internal quotation marks omitted.) Hyllen-Davey v. Plan ZoningCommission, 57 Conn. App. 589, 592, 749 A.2d 682 (2000). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Grant v. Bassman, 221 Conn. 465, 470,604 A.2d 814 (1992).
 I
Counts one, two, and three purported to be brought pursuant to the CT Page 14180 federal civil rights statute, 42 U.S.C. § 1983; count six purports to be brought pursuant 42 U.S.C. § 1983, 1985. The plaintiff is not required to exhaust his statutory remedies before bringing a claim under42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641, 649,117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) ("[w]e reemphasize that § 1983 contains no judicially imposed exhaustion requirement . . . absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed"); Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir. 1998) ("[i]n Heckv. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 2370 (1994), the Supreme Court noted that "§ 1983 contains no exhaustion requirement beyond what Congress has provided.' Thus, exhaustion is necessary prior to bringing a § 1983 action only where Congress has carved out a specific exception to the general rule that exhaustion is not required");Cumberland Farms, Inc. v. Town of Groton, 247 Conn. 196, 209, 719 A.2d 465
(1998) ("we conclude that the inapplicability of the exhaustion doctrine is equally applicable to both § 1983 taking claims and pure taking claims"); Clinton Associates v. Board of Selectmen, 217 Conn. 588, 599,587 A.2d 126, cert. denied, 502 U.S. 814, 112 S.Ct. 64, 116 L.Ed.2d 39
(1991) ("federal law prevents us from applying the exhaustion doctrine to a [§] 1983 claim). Therefore, the defendants' motion to dismiss counts one, two, three and six is denied.[5]
 II
It remains to be considered whether the exhaustion doctrine deprives the court of jurisdiction to entertain the plaintiff's claims in counts four and five. The fourth count alleges that the defendant's denied the plaintiff's application with the purpose and intent of depriving him of his right to equal protection of the laws. The fifth count alleges that the defendants knew or should have known that their action would impair or destroy the plaintiff's expectations of economic gain and that the defendants' conduct was the proximate cause of such loss or impairment.
The plaintiff claims that General Statutes § 13a-49 is inapplicable for several reasons.
 A.
First, the plaintiff claims that his application to the city council of West Haven for the discontinuance of Fowler Street was not made pursuant to General Statutes § 13a-49 but pursuant to § 206-15 of the West Haven Code of Ordinances. Since § 206-15 of the West Haven Code of Ordinances contains no provision for an appeal to the superior court, the plaintiff argues that he had no administrative remedy to exhaust, therefore, he may maintain this "plenary action for relief." OctoberCT Page 14181Twenty-Four, Inc. v. Planning Zoning Commission, 35 Conn. App. 599,609, 646 A.2d 926 (1994).
Section 206-15 of the West Haven Code of Ordinances provides: "A request may be made to discontinue any highway or private way or land dedicated as such. The premises to be discontinued shall hereinafter be referred to as the `highway.'" Neither this provision, nor the provisions that follow it in the West Haven Code, purport to supercede the substantive rights conferred by General Statutes § 13a-49. Rather, the city's ordinance provides a procedure for the exercise within the city of West Haven of the rights contained in § 13a-49. The plaintiff's argument that § 206-15 of the West Haven Code of Ordinances, rather General Statutes § 13a-49, controls his cause of action is unpersuasive.
 B.
Next the plaintiff observes that Section 13a-49 provides for the discontinuance of highways and private ways by "selectmen of any town." The plaintiff argues that the statute is inapplicable because West Haven is not a town but a city and does not have selectmen.
"When legislation contains a specific definition, the courts are bound to accept that definition." International Business Machines Corporationv. Brown, 167 Conn. 123, 134; 355 A.2d 236 (1974). Section 13a-1 (b) of the General Statutes contains definitions for certain words used in title 13a. Section 13a-1(b) provides in relevant part: "Wherever in the general statutes or special acts pertaining to highways the word "town' is used, it shall include city or borough. The word "selectmen', wherever the same occurs in the statutes which relate to the care and maintenance of highways, shall, in relation to towns having a consolidated town and city government and bound to care for and maintain the highways therein, be construed to mean the board, officer or commission having charge of the care and maintenance of such highways." (Emphasis added.) Neither party disputes that in West Haven the city council is the board "having charge of the care and maintenance of such highways" within the meaning of General Statutes § 13a-1. Therefore, § 13a-49 applies to actions by cities such as West Haven.
 C.
The plaintiff next argues that General Statutes § 13a-49 is inapplicable to the City of West Haven because of the exception contained in the statute "where such highway is within a city . . ."
"The process of statutory interpretation involves a reasoned search for CT Page 14182 the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; Internal quotation marks omitted.) UnitedIlluminating Co. v. New Haven, 240 Conn. 422, 431, 692 A.2d 742 (1997).
First, reading the text of § 13a-49 as the plaintiff urges renders the statute nonsensical. As observed supra, § 13a-49 must be read in concert with § 13a-1. When this is done, however, § 13a-49
provides for the discontinuance of highways by cities but then excepts highways within a city. In construing a statue, courts must assume that a reasonable and rational result was intended. Schreck v. Stamford,250 Conn. 592, 597, 737 A.2d 916 (1999). "[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment. . . . Courts must presume that the General Assembly did not intend to enact useless legislation." (Citations omitted; internal quotation marks omitted.) Biasetti v. Stamford, 250 Conn. 65, 81, 735 A.2d 321 (1999).
Second, with respect to legislative history, the clause on which the plaintiff relies first appeared in the statutory ancestor to § 13a-49
in 1888. See General Statutes (Rev. 1888) § 2708. Because of this vintage, there is no legislative history illuminating the intent of the legislature in enacting the legislation. New England Savings Bank v.Bedford Realty Corp., 246 Conn. 594, 601-02, 717 A.2d 713 (1998) (advent of comprehensive published legislative history did not occur in Connecticut until 1953).
Third, with respect to the statute's relationship to existing legislation, General Statutes § 13a-1(b) provides: "Wherever in the general statutes or special acts pertaining to highways the word `town' is used, it shall include city or borough. The word "selectmen', wherever the same occurs in the statutes which relate to the care and maintenance of highways, shall, in relation to towns having a consolidated town andcity government and bound to care for and maintain the highways therein, be construed to mean the board, officer or commission having charge of the care and maintenance of such highways."
As observed supra, General Statutes § 13a-1 and General Statutes § 13a-49 must be read together. Commission on Human Rights andCT Page 14183Opportunities v. Truelove and Laclean, Inc., 238 Conn. 337, 347,680 A.2d 1261 (1996). "We assume that the legislature attempts to create a consistent body of law. . . . Assuredly, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law. . . . Indeed, this tenet of statutory construction requiring us to read statutes together is particularly applicable when the statutes relate to the same subject matter. . . . Finally, [w]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Citations omitted; internal quotation marks omitted.) Id.
General Statutes § 13a-1(b) recognizes that some municipalities have consolidated town and city governments that are bound to care for and maintain highways therein; some do not. Reading § 13a-1 and § 13a-49 together to achieve a harmonious and consistent result, the court concludes that the "except[ion] where such highway is within a city" applies where the highway sought to be discontinued by a town is situated in both the town and a city, the governments of which have not been consolidated. See General Statutes §§ 7-195 to 7-201
(consolidation of governments). The parties do not dispute that Fowler Street is located wholly within West Haven and that West Haven has sole jurisdiction of the street. Thus, the portion of the statute to which the plaintiff refers is inapplicable to this case.
 D.
Next the plaintiff argues that exhaustion of the statutory remedy provided in § 13a-49 is permissive and not mandatory. This argument on the language of the statute which provides that "[a]ny person aggrievedmay be relieved by application" to the Superior Court. (Emphasis added). Although the word "may" is generally construed not to be mandatory;Keiser v. Conservation Commission, 41 Conn. App. 39, 674 A.2d 439
(1996); the plaintiff's argument is unpersuasive.
The word "may" in statutes authorizing appeals is deemed mandatory.Lake Garda Co., Inc. v. LeWitt, 126 Conn. 588, 590-91, 13 A.2d 510
(1940). Indeed, "may't is the settled style by which the right of appeal has been framed in hundreds of statutes throughout the Connecticut General Statutes — the cataloguing of which would unduly lengthen this opinion — including those statutes to which the exhaustion doctrine has been held to apply. See, e.g, Doe v. Department of PublicHealth, 52 Conn. App. 513, 727 A.2d 260, cert. denied, 249 Conn. 908,733 A.2d 225 (1999) (Section 4-183 (b) of the Uniform Administrative Procedures Act "reflects the principle that exhaustion of administrative agencies is required except in exceptional circumstances."); OGCT Page 14184Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419,655 A.2d 1121 (1995) (exhaustion generally required to appeal under General Statutes § 8-8). The plaintiff has advanced no reason why the court should treat the word "may" in General Statutes § 13a-49
differently than it is treated and clearly intended to be treated in statutes such as § 4-183 and § 8-8. The court concludes that "may," as used in § 13a-49 is mandatory and not permissive.
 E.
The plaintiff also argues that he was not obligated to seek relief pursuant to General Statutes § 13a-49 because the statute only authorizes relief from the discontinuance of a road, not the refusal to discontinue. Therefore, the plaintiff argues, he is not aggrieved by the discontinuance of a road and could not have invoked the remedy contained in § 13a-49. The court also finds this argument unavailing.
"Appeals to the courts from . . . [boards] exist only under statutory authority. . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." Ensign-Bickford Realty v.Zoning Commission, 245 Conn. 257, 262-63, 715 A.2d 701 (1998). "Thus, the determination of the existence and extent of appellate jurisdiction depends on the terms of the statutory . . . provisions in which it has its source. . . ." (Citations omitted; internal quotation marks omitted.)Charles Holdings, Ltd. v. Planning Zoning Board of Appeals,208 Conn. 476, 479, 544 A.2d 633 (1988). Accordingly, determining whether the appeal provisions of General Statutes § 13a-49 apply to the failure to discontinue a highway must be determined from interpreting the statute.
"We begin our analysis with the text of the statute." Gauger v.Frankl, 252 Conn. 708, 710, ___ A.2d ___ (2000). The first two of the three sentences comprising General Statutes § 13a-49 do not explicitly say, as the plaintiff suggests, that only persons aggrieved by the discontinuance of a highway may be relieved by application. The first sentence authorizes the discontinuance of highways and private ways. The second sentence states: "Any person aggrieved may be relieved by application to the Superior Court, to be made and proceeded with in the manner prescribed in section 13a-62." Section 13a-62, in tum, states: "Any person aggrieved by the doings of the selectmen . . . may . . . apply to the superior court." Reading § 13a-49 and § 13a-62
together, it is clear that a person aggrieved by the refusal to discontinue a highway or private way may appeal.
In addition, the third sentence of § 13a-49 provides: "Whenever a CT Page 14185 petition has been presented to the selectmen for such discontinuance or partial discontinuance of any land dedicated as a highway or private way but which has not been actually used, worked or accepted, as a highway, by the town, and such discontinuance or partial discontinuance has not been made by the selectmen and approved by the town within twelve months after such presentation, any person aggrieved may be relieved by application to said court, to be made and proceeded with in the manner prescribed in section 13a-62." (Emphasis added.) This provision is of particular relevance here since the plaintiff complains of the refusal of the defendant to discontinue a "paper street." A "paper street" includes a street that appears on a map but which has not been completed or opened for public use. Black's Law Dictionary (7th ed. 1999). It would have been anomalous for the legislature to have conferred a right to relief on "any person aggrieved" where the selectmen have failed to act at all, but only a right to relief for a person aggrieved by the discontinuance of a highway where the selectmen have actually acted.
Moreover, in seeking to determine that meaning of legislative language, we also look to the statute's relationship to other existing legislation. Bortner v. Woodbridge, supra, 250 Conn. 258-59. General Statutes § 13a-50,[6] which derives from the same 18th century statutory ancestor as does § 13a-49,[7] provides that the Superior Court "on application of any person" may discontinue any highway in its judicial district which cannot be discontinued by the selectmen. The statute contemplates the discontinuance of highways within the exceptions of General Statutes § 13a-49, specifically (1) highways originally laid out by the General Assembly or by the Superior Court, and (2) highways within a city where a town, with which the city has not been consolidated, seeks to discontinue its portion of the highway. SeeGeneral Dynamics Corp. v. Groton, 184 Conn. 483, 485-86, 440 A.2d 185
(1981); Webb v. Rocky-Hill, 21 Conn. 468 (1852); Marrin v. Spearow,35 Conn. App. 398, 404, 646 A.2d 254 (1994). A person aggrieved by the denial of an application to discontinue a highway under § 13a-50
would have the right to appeal such denial pursuant to General Statutes § 52-263.[8] See Webb v. Rocky-Hill, supra. It would have been anomalous for the legislature to have intended that such a person not have the right to judicial review under § 13a-49 where the highway was originally laid out by selectmen. "[T]he legislature is presumed to exercise its statutory authority with knowledge of existing statutes and with the intention of creating one consistent body of law." Board ofPublic Utilities Commission v. Yankee Gas Services Co., 236 Conn. 287,295, 672 A.2d 953 (1996).
Finally, the court presumes that the legislature was aware of "the importance in our free society of the right of access to our courts."Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 670, CT Page 14186560 A.2d 975 (1989). Article first, § 10 of the Connecticut constitution provides that "[a]ll courts shall be open, and every person, for an injury dane to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." In the absence of clear language to the contrary, this court holds that General Statutes §13a-49 confers a right of review on a person aggrieved either by the discontinuance or the refusal to discontinue a highway or private way. Cf. Caltabiano v. Planning Zoning Commission, supra.
 F.
The court now turns to the ultimate issue of whether the fourth and fifth counts of the plaintiff's complaint should be dismissed because the plaintiff failed to exhaust the remedy available to him under General Statutes § 13a-49.
"The doctrine of exhaustion of administrative remedies . . . provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . The doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to . . . exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved. . . .
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. . . . Thus, [t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process. . . . Moreover, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise. . . . [N]otions of administrative autonomy CT Page 14187 require that the agency be given a chance to discover and correct its own errors. . . . [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." (Citations omitted; internal quotation marks omitted.) Johnson v. Statewide GrievanceCommittee, 248 Conn. 87, 95-96, 726 A.2d 1154 (1999).
Here, we are dealing with that aspect of the exhaustion doctrine that requires appeal to the courts after an agency decision. See CountryLands, Inc. v. Swinnerton, 151 Conn. 27, 193 A.2d 483 (1963). Application of the exhaustion doctrine here would not subserve the policies underpinning the doctrine. The plaintiff has "exhausted" his remedy before the city council. There are no agency findings or conclusions of which a reviewing court may benefit. Nor is there a danger that the court will prematurely decide a question that may have been resolved satisfactorily before the city council. "As the United States Supreme Court has recognized, the `[a]pplication of the [exhaustion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved' and that the doctrine should not be "applied blindly in every case.' McKart v. United States, [supra, 395 U.S. 193, 200-201]." Cummings v. Tripp, 204 Conn. 67, 78-79,527 A.2d 230 (1987). The doctrine of exhaustion is inapplicable where, as here, the plaintiff has done all he can do before the city council and the statutory right of review is entirely de novo.
The applicable rule, however, is closely related to the exhaustion requirement. That rule provides that "the statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with." (Internal quotation marks omitted.) Okee Industries, Inc. v. National Grange Mutual Ins. Co.,,225 Conn. 367, 373, 623 A.2d 493 (1993); see also Beach v. Trumbull,133 Conn. 282, 50 A.2d 765 (1947). Notably, the whole business of discontinuing roads and highways is entirely statutory; Clark v.Cornwall, 93 Conn. 374, 378, 106 A. 347 (1919); New London v. New York,N.H.H.R. Co., 85 Conn. 595, 601, 84 A. 114 (1912); Greist v.Amrhyn, 80 Conn. 280, 68 A. 521 (1907); Doolittle v. Preston,5 Conn. App. 448, 451, 499 A.2d 1164 (1985); as is the right to judicial review. Rybinski v. State Employees' Retirement Commission, 173 Conn. 462,472, 378 A.2d 547 (1977); see Schwartz v. Town Plan Zoning Commission,168 Conn. 20, 24-25, 357 A.2d 495 (1975). A corollary to this rule is that "[t]ime requirements are mandatory and, if not complied with, render the appeal subject to abatement." Valley Cable Vision, Inc. v. PublicUtilities Commission, 175 Conn. 30, 32, 392 A.2d 485 (1978). "`Statutes and special laws . . . fixing a rather brief time in which appeals may be taken to the courts from the orders and decisions of [municipal] boards are evidently designed to secure in the public interest a speedy CT Page 14188 determination of the issues involved; and to make it possible to proceed in the matter as soon as the time to take an appeal has passed if one has not been filed.' Carbone v. Zoning Board of Appeals of Hartford,126 Conn. 602, 607, 13 A.2d 462." Daley v. Board of PoliceCommissioners, 133 Conn. 716, 719, 54 A.2d 501 (1947).
General Statutes § 13a-49 states that "[a]ny person aggrieved may be relieved by application to the superior court, to be made and proceeded with in the manner prescribed in section 13a-62." General Statutes § 13a-62 provides that "[a]ny person aggrieved by the doings of the selectmen in laying out a highway may, within eight months after the survey thereof has been accepted by the town, apply to the superior court . . . for relief. . . ." While it may appear that the two statutes do not mesh well, it has long been held that these statutes, read together, "give to the person aggrieved eight months after the discontinuance of the highway by the selectmen in which to take his appeal. . . ." Clark v. Cornwall, supra, 93 Conn. 379. This action was not brought within eight months of the city council's action.
Had the plaintiff timely applied to the superior court pursuant to General Statutes §§ 13a-49, 13a-62, he could have received the relief that he had sought in the first instance from the city council.[9]
Having failed to avail himself of the remedy provided by General Statutes § 13a-49, the plaintiff may not bring this action for other relief.
In reaching this conclusion the court rejects the plaintiff's argument that "[e]ven if he had chosen . . . to appeal to the superior court, pursuant to § 13a-49 immediately after the denial of his request for abandonment, the time limitations, which were imposed upon him by the real estate contract which he had entered into for the sale of land affected by the abandonment, were such that a resolution of the matter by the courts pursuant to CGS § 13a-49 would not have afforded him reasonable opportunity to consummate the sale." This argument is also unpersuasive. "Contracts of private parties cannot vary obligations imposed by law." Panaroni v. Johnson, 158 Conn. 92, 104, 256 A.2d 246
(1969).
That the plaintiff has alleged a violation of equal protection in count four does not excuse him from availing himself of his statutory remedy. Presumably, the plaintiff seeks in that count to allege a Binette-type cause of action. See Binette v. Sabo, 244 Conn. 23, 710 A.2d 688 (1998). First, the plaintiff provides no analysis as to why such a cause of action should be found on the facts here. Second, the Supreme Court has "repeatedly held. . that [d]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] CT Page 14189 procedure . . . which [the litigant] has chosen to ignore." (Bracketed material in original; internal quotation marks omitted) Fish Unlimitedv. Northeast Utilities Service Co., 254 Conn. 1, 18, ___ A.2d ___ (2000). General Statutes § 13a-49 provided the plaintiff with just such a procedure.
The motion to dismiss counts one, two, three and six is denied. Because the plaintiff failed to seek review of the city council's decision pursuant to General Statutes § 13a-49 within the time provided by General Statutes § 13a-62, the motion to dismiss counts four and five is granted.