## JOHN M. GETCHELL *versus* INHABITANTS OF WELLS.

The selectmen of the defendant town addressed and delivered to the plaintiff, a duly appointed and sworn highway surveyor of the town, a written order, officially signed, of the following tenor: — "You are requested to keep the snow broken down within the limits of your district, so as to make it passable, and to do it with as little expense to the town as possible, and to

keep an account of each one's own labor and make return of it to us five days before next annual meeting." Thereupon the plaintiff employed several men to aid him in suitably removing the snow, and paid them a reasonable compensation therefor, but made no return of their labor as directed. In assumpsit, for his own labor and for the money paid his employees, — *Held*, that —

1. The written order was directed to the plaintiff in his official capacity, and required the performance of an official duty;

2. It did not authorize him to perform the labor, pay the employees, and look to the town for reimbursement; but that,

3. As a surveyor under the statute, to employ, with the consent of the selectmen thus expressed, men, of whose work he was to make a return, and who would thereby become entitled to their pay from the treasury of the town.

A town may, at the same, or a subsequent meeting duly called for that purpose, rescind a vote previously passed, whenever the rights of other interested parties have not intervened.

ON REPORT.

ASSUMPSIT, on an account annexed, for the labor of the plaintiff, and for money paid by him to several persons employed by him in January and February, 1861, in removing the snow from the highways within the limits of a certain highway district in the defendant town, of which the plaintiff had been previously duly appointed highway surveyor by the selectmen of the defendant town.

It was in proof that the plaintiff was officially appointed and qualified to fill a vacancy occasioned by the resignation of the former incumbent, who, before vacating the office, had expended all the taxes appropriated to his district; that the labor was necessary and compensation was reasonable.

It also appeared that, at meetings duly called at the respective times named, the town passed the following votes:

Sept. 9, 1861, — "Voted, to instruct our selectmen to draw orders to pay for breaking down and removing snow last winter."

Dec. 11, 1861, — "Voted, to raise $1200 to pay the bills for breaking down and removing snow in the winter of 1861, and divide it equally in the several districts."

Dec. 11, 1861, — "Voted, to rescind the vote wherein we voted to raise $1200," &c.

Dec. 11, 1861, — "Voted, to raise $1000 to pay the bills for breaking down and removing snow in all sections of the town in winter of 1861."

Same date. — "Voted, that the selectmen be auditors to settle the bills against the town for breaking down and removing snow in the winter of 1861."

Dec. 26, 1861, — "Voted, to rescind the vote whereby we voted to raise $1000, at a town meeting holden Dec. 11, 1861."

Same date. — "Voted, that the town do not raise any money to pay bills against the town for breaking down and removing snow in the highways, in the winter of 1861."

Same date. — "Voted, to instruct the selectmen, and that they are instructed, not to draw any orders or make any assessments, to pay bills for breaking down and removing snow in the winter of 1861."

The Court to render such judgment as the law and facts required.

*I. S. Kimball*, for the plaintiff.

*Dane & Bourne*, for the defendants.

BARROWS, J. — If the plaintiff could make good his position that he, in his individual capacity, was employed by a majority of the selectmen, who are the prudential agents of the town, to keep a certain portion of the roads in the town free from obstruction by snow, (after the amount raised by the town for that object had been expended, and the power of the surveyor to employ laborers who might recover their pay from the town, had been exhausted,) and for that purpose to procure necessary help at his own expense, his claim for a reimbursement, upon proof that he had performed the service, might be considered as established.

But, unfortunately for him, the case presents a very different aspect; and we are bound to decide it according to the legal rights of the parties, although we may thus find ourselves compelled to refuse compensation to the plaintiff

for expenses incurred by him in good faith for the benefit and advantage of the defendants.

On the 24th of January, 1861, the plaintiff was duly appointed by the selectmen, acting under R. S., c. 3, § 12, a surveyor of highways in a certain district, to fill a vacancy caused by the resignation of Gilman Bennett, who had previously expended all the moneys appropriated for the repairs of highways in the district, including their proportion of the " snow tax." In that appointment he was regularly invested with all the powers and required " to execute all the duties appertaining to said office." He accepted it and was duly sworn. On the same day he received the following paper (signed by two of the selectmen,) which is the only evidence he produces of authority from the selectmen to make this bill against the town : —

" To Mr. John M. Getchell, Sir, — You are requested to keep the snow broken down within the limits of your district, so as to make it passable, and do it with as little expense to the town as possible, and keep an account of each one's own labor and make a return of it to us five days before our next annual town meeting."

> Signed,—     " Wm. Storer, jr., } *Selectmen*
>             " Wm. Gooch,    } *of Wells.*

" January 24, 1861."

That this order was directed to the plaintiff in his official capacity, and required of him the performance of a certain duty in the office to which he had that day been appointed, is too manifest to admit of doubt or to require discussion. Its plain intent and meaning is, not to authorize him to do the work, pay the help, and look to the town for reimbursement, but, as a surveyor, in his district, under the statute, to employ, with the consent of the selectmen thus expressed, men of whose work he was to make return, and who would thereby become entitled to their pay from the town treasury. The rights and duties of surveyors of highways are specifically defined by statute, and their powers are limited to those thus conferred by legal enactment. And the tendency

of all the legislation we have recently had has been rather to restrict than enlarge their powers. That it was not originally designed to be an office of profit or emolument, may be inferred from the fact that the statute of 1821, c. 118, § 13, specifically imposes a forfeiture of $10 to the use of the town upon any man, who, being elected, shall refuse to serve, with a proviso that no man shall be held to serve more than one year in three. By § 15, of the same chapter, it was provided that, in case the sum appropriated for any particular district proved insufficient for the repair of the ways, the surveyor, with the consent of the major part of the selectmen, might employ inhabitants enough to make up the deficiency, not, however, giving him a right of action against the town therefor, but providing that the persons thus employed should be equitably paid out of the town treasury, or have credit on the next highway tax, or be otherwise compensated in any manner previously prescribed by the town, who might authorize the surveyor to agree with them as to the manner of the compensation; but this has been since reduced to an authority, in such case, if he have the consent of the selectmen in writing, to employ inhabitants of the town to labor for pay, not exceeding fifteen per cent. of the amount committed to him. R. S., 1857, c. 18, § 50.

It is not perceived that the condensation of this § 50 from § 74, c. 25, R. S. of 1841, was designed to affect the mode of making payment to the parties rendering the service, or that it gives to the surveyor the right to volunteer a payment to the persons employed, and recover of the town. He was requested to make return to the selectmen "of each one's own labor" in order that the selectmen might know how much each man was entitled to receive. To enable him to recover even the trifling amount of fifteen per cent. of the snow tax for his district, it should at least have appeared that he made the required return, and that those whom he had rightfully employed had been refused their pay by the town authorities, and had claimed and received it at

his hands as their immediate employer. That both he and the selectmen apparently overlooked the statute limitation of his power does not better his condition. The only authority he received was as a surveyor. What that was the statutes declare. He can acquire no right of action by exceeding it. It was his duty, as a surveyor, if the 15 per cent. proved insufficient, as well it might, to inform the selectmen of any exigency which might require an expenditure exceeding that which he, as surveyor, could lawfully make, and if, thereafterwards, the prudential agents of the town saw fit to contract with him for the performance of additional service, he might maintain his action therefor. The difficulty is, there is no proof of such contract. The plaintiff must fail unless relieved by the votes of the town subsequently passed. But those votes were general in their terms, and might apply to other bills that had legally accrued for breaking down and removing snow, and were all rescinded without having been acted upon by anybody,—certainly not by the plaintiff; he did nothing in consequence of the vote. As in *Wellington* v. *Howard*, 8 Cush., 68, the vote was, at most, an authority to the town officers to pay, "and being revoked by the reconsideration before it was acted on, it ceased to have any effect, as if it had never been passed." *Ingalls* v. *Auburn*, 51 Maine, 352. *Judgment for the defendants.*

APPLETON, C. J., KENT, WALTON, DANFORTH and TAPLEY, JJ., concurred.